1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                   SOUTHERN DISTRICT OF CALIFORNIA
10

11   CARLOS MURILLO VEGA,                    Case No.:  21cv1770-GPC(LR)

12                              Plaintiff,   **ORDER ON JOINT MOTION FOR**
13   v.                                      **DETERMINATION OF DISCOVERY**
                                             **DISPUTES [ECF NO. 59]**
14   MANAGEMENT AND TRAINING
     CORPORATION,
15
16                              Defendant.
17

18        On October 21, 2022, Plaintiff Carlos Murillo Vega ("Plaintiff") and Defendant
19   Management & Training Corporation ("Defendant") filed a joint motion to address
20   several discovery disputes.  (See ECF No. 59 ("J. Disc. Mot.").)  The Joint Motion was
21   accompanied by separately filed briefs related to Plaintiff's motion to compel further
22   discovery responses and for sanctions.  (See Pl.'s Mot. to Compel & for Sanctions, ECF
23   No. 59-1 ("MTC")); Def.'s Opp'n to Pl.'s Mot. to Compel, ECF No. 60 ("Opp'n").)  For
24   the reasons set forth below, Plaintiff's MTC is **GRANTED IN PART AND DENIED**
25   **IN PART**.
26
27
28

## I.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Defendant is a correctional facility contractor that manages the Imperial Regional Detention Facility in Calexico, California ("Imperial") pursuant to a contract with the U.S. Immigration and Customs Enforcement Agency ("ICE").  (See Compl. ¶ 2, ECF No. 1.)  Plaintiff alleges that while incarcerated at Imperial between December of 2019 and February of 2021, Defendant held him in a Special Management Unit ("SMU")—a form of solitary confinement—in violation of Defendant's contract with ICE under the agency's Performance-Based National Detention Standards ("PBNDS").  (See id. ¶¶ 25-29.)  The Complaint alleges causes of action for negligence, intentional infliction of emotional distress, and violations of California Government Code Section 7320, which creates a private right of action against for-profit correctional facility contractors for violations of federal detention standards.

The instant MTC was filed after several informal discovery conferences and two continuations of the discovery deadlines in this case by Judge Michael S. Berg.  (See ECF Nos. 28; 50).  Most recently, the parties conducted a telephonic discovery conference before Judge Berg on September 26, 2022, during which Plaintiff requested a briefing schedule for a motion to compel and for sanctions based on Plaintiff's dissatisfaction with Defendant's document production and witness testimony.  (See ECF No. 56.)  The case was transferred to this Court's docket on October 5, 2022, (ECF No. 58), and the parties filed a joint discovery motion accompanied by concurrently filed briefs on October 21, 2022.  (ECF Nos. 59; 60.)

## II.   LEGAL STANDARD

### A.   Discovery in General

The Federal Rules of Civil Procedure authorize parties to obtain discovery regarding any nonprivileged matter that is relevant to any claim or defense and proportional to the needs of the case, "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and

whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).  Relevant information need not be admissible at trial to be discoverable.  Id.  Additionally, district courts have broad discretion to determine relevancy for discovery purposes.  See Hallet v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002).  Similarly, district courts have broad discretion to limit discovery where the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;" the requesting party has had ample opportunity to obtain discovery; or the discovery sought is beyond the scope of Federal Rule of Civil Procedure 26(b)(1).  Fed. R. Civ. P. 26(b)(2)(C).

**B.   Requests for Production**

Federal Rule of Civil Procedure 34 provides that a party may serve requests for documents or tangible things on any other party that relate to any matter within the scope of discovery defined in Rule 26(b).  Fed. R. Civ. P. 34(a).  The propounding party may move to compel a response if a party fails to produce documents requested under Rule 34.  See Fed. R. Civ. P. 37(a).  "The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1).  Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining[,] or supporting its objections."  Bryant v. Ochoa, No. 07cv200 JM (PCL), 2009 WL 1390794, at *1 (S.D. Cal. May 14, 2009) (internal citations omitted) (citing Soto v. City of Concord, 162 F.R.D. 603, 610 (N.D. Cal. 1995); DIRECTV, Inc. v. Trone, 209 F.R.D. 455, 458 (C.D. Cal. 2002)).  The party opposing discovery is "required to carry a heavy burden of showing" why discovery should be denied.  Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975).

**C.   Interrogatories**

An interrogatory may relate to any matter that may be inquired of under Rule 26(b).  Fed. R. Civ. P. 33(a)(2).  The responding party must answer each interrogatory by

21cv1770-GPC(LR)

stating the appropriate objection(s) with specificity or, to the extent the interrogatory is not objected to, by "answer[ing] separately and fully in writing under oath." Id. at 33(b). The responding party has the option in certain circumstances to answer an interrogatory by specifying responsive records and making those records available to the interrogating party. Id. at 33(d).

**D.    Rule 30(b)(6) Witnesses**

Federal Rule of Civil Procedure 30(b)(6) allows a party to depose an entity by identifying a set of topics for the deposition. Fed. R. Civ. P. 30(b)(6). The deponent-entity is responsible for selecting and presenting witnesses who are prepared to testify on those topics. See Jones v. Hernandez, Case No.: 16-CV-1986-W(WVG), 2018 WL 539082, at *1 (S.D. Cal. Jan. 23, 2018) (citing Updike v. Clackamas Cnty., Case No. 3:15-cv-00723-SI, 2016 WL 111424, at *2 (D. Or. Jan. 11, 2016)). Because the entity must "present witnesses who are capable of providing testimony on the noticed topics, regardless of whether the information was in the specific witness's personal knowledge," the party requesting the deposition "must describe with reasonable particularity [or as another court explained, 'with painstaking specificity,'] the matters for examination." Updike, 2016 WL 111424, at *2-3 (quoting Sprint Commc'ns Co. L.P. v. Theglobe.com, Inc., 236 F.R.D. 524, 527 (D. Kan. 2006)). On the other hand, "a party responding to discovery has 'an obligation to construe . . . discovery requests in a reasonable manner.'" Westmoreland v. Regents of the Univ. of Cal., No. 2:17-cv-01922-TLN-AC, 2019 WL 932220, at *3 (E.D. Cal. Feb. 26, 2019) (internal quotations omitted).

## III.   DISCUSSION

The Joint Discovery Motion and accompanying briefs outline six categories of disputes at various points in the discovery process. Plaintiff contends that Defendant should be ordered to produce additional documents in response to Plaintiff's requests for production (and one interrogatory) related to: (i) Defendant's communications with ICE,

(see J. Disc. Mot. at 3);[1] (ii) Defendant's reviews of Plaintiff's detention placement, (see id. at 7); (iii) movement of SMU detainees to a general population dorm, (see id. at 9); (iv) Plaintiff's conditions of confinement and access to services, (see id. at 19); and (v) documents located at Defendant's headquarters, (see id. at 22).  Additionally, Plaintiff requests that the Court order Defendant to produce a witness who is properly prepared to discuss Defendant's compliance with its discovery obligations pursuant to Rule 30(b)(6). (Id. at 23).  Finally, Plaintiff requests that the Court impose monetary and evidentiary sanctions against Defendant.  (See MTC at 11.)  The Court will address each category in turn.

## A.   Documents Related to Defendant's Communications with ICE

This category of documents relates to Defendant's communications with ICE, the Department of Homeland Security, and the California Department of Justice about Plaintiff during his detention at Imperial, his detention classification status, investigations into Defendant, and its classification of detainees.  (See J. Disc. Mot. at 3-5 (RFPs No. 1, 24, 27, 62).)[2]  Plaintiff avers that despite Defendant's representation it produced all responsive documents related to this category of requests, Brian Robinson—Imperial's compliance manger and Defendant's designated Rule 30(b)(6) witness on document retention and collection—testified that Defendant had "withheld documents from its production." (J. Disc. Mot. at 6.)  In support of this assertion, Plaintiff points to Mr. Robinson's deposition testimony in which he notes that "ICE was not favorable [on]

---

[1] Unless otherwise noted, the Court cites to CM/ECF generated pagination.

[2] The Court notes that Plaintiff admittedly did not seek to comply with the meet and confer requirement related to this category of requests, raising arguments about the disputed responses for the first time during an Informal Discovery Conference ("IDC") before Judge Berg on September 26, 2022.  (See MTC at 7; Opp'n at 6.)  While it would be reasonable to deny the instant motion based on this failure alone, see, e.g., Rogers v. Giurbino, 288 F.R.D. 469, 477 (S.D. Cal 2012) ("A court can deny a motion to compel solely because of a party's failure to meet and confer prior to filing the motion."), the Court will instead reach the parties' other arguments.

releasing a lot of the documentation." (<u>See</u> MTC at 7 (citing ECF No. 59-2, Ellen Leonida Decl. ("Leonida Decl."), Ex. 13 at 103:16-17).)[3] Plaintiff argues that this testimony demonstrates Defendant is withholding documents related to this category of requests. (<u>See</u> J. Disc. Mot. at 6.) Plaintiff further contends that if, in the alternative, Defendant did not provide adequate documentation of Plaintiff's placement in solitary confinement such that ICE had no way of remedying the issue, Defendant should "admit that under penalty of perjury." (<u>See</u> <u>id.</u>)

Defendant counters that Mr. Robinson's testimony is taken out of context. (<u>See</u> Opp'n at 6.) Rather—as Defendant explains it—that line of Mr. Robinson's testimony refers to ICE's objection to the production of inspection reports created by third-party agencies directed at ICE compliance, not documents related to communications between Imperial or Defendant and ICE. (<u>See</u> <u>id.</u>) Defendant cites to additional portions of Mr. Robinson's testimony in which he explains that ICE objected to producing compliance reports about Imperial generated by third parties such as the "Office of Detention Oversight." (<u>See</u> J. Disc. Mot. at 6-7 (citing ECF No. 60-3, John Rice Decl. ("Rice Decl."), Ex. 1 at 103:17-20; 104:4-5).)[4] Additionally, Defendant cites to other testimony in which witnesses noted that ICE's communications with Imperial were largely conducted in person or over the phone. (<u>See</u> <u>id.</u> at 7 (citing additional deposition testimony).)

As an initial matter, the Court notes that Plaintiff's arguments related to these requests for production are somewhat contradictory. On one hand, Plaintiff asks the Court to order Defendant to produce additional documents related to Defendant's communications with ICE, but at the same time insists on Defendant admitting that it *did not* communicate with ICE if such communications do not exist. (<u>See</u> <u>id.</u>) Given that

---

[3] Internal pagination cited here.

[4] Internal pagination cited here.

Plaintiff has had several months to request information from Defendant related to these communications, as well as the requirement that the Court address a motion to compel in a piecemeal fashion based on specific discovery requests, see Hon. Lupe Rodriguez, Jr. Civ. Chambers R. § IV.D.1. (requiring the parties to provide the exact wording of the discovery request or deposition question in dispute),[5] the Court declines to rewrite Plaintiff's requests for production and compel Defendant to address the inverse of the requests at issue. See Ramirez v. Zimmerman, No. 18-cv1062-BAS-NLS, 2019 WL 2106594, at *3-4 (S.D. Cal. May 14, 2019) (compiling cases and declining to order further discovery when the party had ample time to seek the information requested could not demonstrate that it was unobtainable during previous discovery periods); see also Mycosafe Diagnostics GmbH v. Life Techs. Corp., CASE NO. 13cv93-BTM (MDD), 2013 WL 12097536, at *2 (S.D. Cal. Oct. 9, 2013) ("it is not the province of the Court to rewrite discovery requests.").

In any event, the testimony that Plaintiff cites is, in the Court's view, insufficient to demonstrate that Defendant is withholding documents related to these requests. Although Plaintiff cites to testimony in which Defendant's compliance manager notes that "ICE was not favorable [on] releasing a lot of the documentation," that testimony appears to be limited to ICE's internal compliance documents, as well as reports generated by third parties. (Compare Leonida Decl., Ex. 13 at 102:16-17 ("ICE was not favorable to releasing a lot of the of the documentation."),[6] with Rice Decl., Ex. 1 at 104:3-5, 19-21 ("anything that they were involved in internally as far as compliance goes. But a lot of times we don't see that.").)[7] Although neither party questions the relevance of documents responsive to these requests, the testimony that Plaintiff points to is

---

[5] Judge Berg's chambers rules require similar specificity. See Hon. Michael S. Berg Civ. Chambers R. § IV.D.1.A.

[6] Internal pagination cited here.

[7] Internal pagination cited here.

insufficient to establish that Defendant is withholding documents related to these requests for production.  Accordingly, the Court **DENIES** Plaintiff's motion to compel Defendant to produce additional documents related to this category of requests (RFPs No. 1, 24, 27, 62).

**B.**     **Documents Related to Defendant's Reviews of Plaintiff's Detention Placement**

These RFPs concern documents related to Defendant's decision to house Plaintiff in administrative segregation, reviews of Plaintiff's detention placement, as well as materials related to the Special Management Committee's evaluation of Plaintiff's housing during his detention at Imperial (RFPs No. 27, 29, 41).  (See J. Disc. Mot. at 7-8.)  Citing to testimony by Defendant's former chief of security Nicholas Rodriguez and classification supervisor Ramon Veloz about notes, PowerPoint presentations, and sign-in sheets from the Special Management Committee's meetings, Plaintiff contends that Defendant is withholding documents from a time period when Plaintiff filed repeated requests to be removed from solitary confinement between November and December of 2020.  (See MTC at 6.)  These documents are especially important, according to Plaintiff, because one of Defendant's primary defenses in this action is its contention that ICE made the final decision to deny Plaintiff's request to be removed from the SMU.  (See J. Disc. Mot. at 9.)

Defendant responds that all documents relevant to these requests have already been produced.  (See id. at 10 (citing ECF No. 60-1, Brian Robinson Decl. ("Robinson Decl.") ¶ 11).)  To explain why the production of these materials was delayed (as well as why some have not been produced at all) Defendant cites to declarations by both Brian Robinson, Imperial's compliance manager, and Michael Petrogeorge, Defendant's corporate counsel, detailing the production and search process for Special Management Committee meeting minutes, PowerPoints, and sign-in sheets.  (See id. at 10; Opp'n at 4-5.)  After learning "during the course of discovery" that documents relating to this time period were not produced, Defendant undertook a search of Imperial's records for the missing materials.  (See Opp'n at 4.)  Mr. Robinson's declaration notes that the

PowerPoint presentations at issue were not stored on the facility's servers, but were rather found on an external hard drive in an Imperial employee's desk drawer.  (See id. (citing Robinson Decl. ¶ 5).)  With respect to sign-in sheets, Defendant notes that they were mis-filed in a binder, but ultimately produced.  (See id. (citing Robison Decl. ¶ 6).) Additionally, Defendant asserts that the meeting minutes for this time period never existed.  Noting that the practice of keeping meeting minutes was largely discretionary, Defendant cites to declarations by Mr. Robinson and Mr. Petrogeorge detailing the process that the facility utilized in searching for these documents.  (See id.; J. Disc. Mot. at 10 (citing ECF No. 60-2, Michael Petrogeorge Decl. ("Petrogeorge Decl.")).)  As detailed in these declarations, the meeting minutes ceased shortly after a new secretary to Imperial's facility administrator was hired, and start again shortly after that secretary left her employment at the facility.  (See J. Disc. Motion. at 10.)  Defendant goes on to explain its attempts to contact the secretary who was responsible for keeping these minutes, which did not result in the discovery of any additional responsive documents. (See id. at 10 (citing Robinson Decl. ¶¶ 6-10).)

Given the level of detail in the explanations for the lack of responsive documents in this category, the Court is satisfied that Defendant conducted a reasonable search for this information and finds that Defendant has not withheld documents related to Imperial's reviews of Plaintiff's detention placement. [8]  For instance, Mr. Robinson's declaration notes that the secretary who would have kept minutes during the Special Management Committee's meetings apparently stopped keeping these notes as a matter

---

[8] Defendant nevertheless has a continuing duty to supplement its production should responsive material be discovered at some point in the future.  See Myles v. Cnty. of San Diego, Case No.: 15cv1985-BEN(BLM), 2016 WL 4366543, at *5 (S.D. Cal. Aug. 15, 2016) ("a party has a continuing duty to supplement or correct its disclosure or response upon learning that "in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.") (citing Fed. R. Civ. P. 26(e)(1)(A)) (internal quotations omitted).

of discretion before Plaintiff's time in the SMU, and describes efforts that corporate counsel made to contact the secretary and discuss where these notes would be located. (See Robinson Decl. ¶¶ 7-9.)  Although neither party questions the importance of these documents, the Court cannot compel Defendant to produce documents that do not exist. Accordingly, Plaintiff's motion to compel Defendant to produce additional documents related to this category (RFPs No. 27, 29, 41) is **DENIED**.

## C.   Documents Related to the Movement of SMU Detainees to a General Population Dorm

The next category of documents relates to Defendant's internal communications about a two-week period in October of 2020 when Plaintiff and other SMU detainees were transferred to a general population dorm (RFPs No. 32, 33, 71, 73, 74,75, 76, 78).[9] (See J. Disc. Mot. at 17.)  Plaintiff asserts that this discovery is of extreme importance because under the PBNDS, the use of administrative segregation for protective custody detainees must be limited to circumstances in which reasonable efforts have been made to provide appropriate, less restrictive housing.  (See MTC at 8.)  Defendant's decision to move SMU detainees to a general population dorm during this time period—according to Plaintiff—demonstrates that alternatives to solitary confinement were readily available. See id.  Defendant responded to previous requests for admission by noting that the move of SMU detainees to a general population dorm occurred to facilitate the cleaning and general maintenance of the SMU.  (See id. (citing Leonida Decl., Ex. 14 at 5).)[10]  When

---

[9] Although the parties have discussed each of the RFPs in this category, it appears that none of these requests were brought to Judge Berg's attention in an IDC—scheduled or otherwise.  (See MTC at 8:24-26 ("[Plaintiff] did not seek an IDC on this issue."); see also J. Disc. Mot. at 17 n.1) (no IDC sought related to RFP No. 71).)  As noted above, although it would be reasonable to deny review of these requests on this basis alone, see Linlor v. Chase BankCard Servs., Inc., Case No.: 17cv5-WQH(KSC), 2018 WL 3611102, at *4 (S.D. Cal. July 23, 2018) (denying application to compel supplemental discovery "for failure to comply with Chambers' Rule[s]."), the Court will instead reach the parties other arguments.

[10] Internal pagination cited here.

Plaintiff subsequently expressed dissatisfaction with the relative lack of responsive documents related to this topic, Defendant appears to have explained in an email that the lack of documentation was due to planning for the move taking place through phone calls and internal meetings.  (See id. (citing Leonida Decl., Ex. 17).)

Plaintiff contends that subsequent deposition testimony demonstrates Defendant is withholding documents related to these requests, and that Defendant "should be compelled to produce the documentation reflecting how and why it was able to create [a] less restrictive alternative (and why it subsequently decided to stop doing so)."  (See J. Disc. Mot. at 17.)  Noting that Defendant has only produced a handful of work orders and paint receipts during the time period in question, Plaintiff cites to testimony by Mr. Rodriguez that purportedly shows SMU detainees were moved to a general population dorm to provide them with activities that they enjoyed, rather than because of maintenance on the SMU.  (See MTC at 9:1-7.)  Additionally, Plaintiff avers that testimony by Mr. Veloz demonstrates that "from 2015-2020 . . . Defendant had a general population dorm where protective custody detainees could be housed."  (J. Disc. Mot. at 17.)  Finally, in a footnote, Plaintiff argues that because Mr. Rodriguez testified to regularly texting with Jose Builteman, Defendant's chief of security, regarding his "professional activities" during the time of Plaintiff's move to the SMU, "Defendant should be ordered to produce responsive texts regarding the SMU transfers" in response to RFP No. 71.[11]  The Court will address each of these contentions below.

### 1.    RFP No. 71

Plaintiff avers that Mr. Rodriguez testified to regularly texting Jose Builteman about his professional activities during the time of Plaintiff's move from the SMU to a general population dorm.  (See J. Disc. Mot. at 17 n.1.)  Noting that Defendant has produced comparatively few documents related to "the SMU transfers," Plaintiff argues

---

[11] "All texts and emails, from February 6, 2021 to present, sent by the individuals YOU identified in response to Interrogatory No. 3 regarding PLAINTIFF or this suit."  (Leonida Decl., Ex. 11 at 15.)

that the Court should order Defendant to produce "responsive text messages" related to this request for production.  (Id.)

Defendant contends Mr. Rodriguez's testimony demonstrates that he has not discussed Plaintiff's case with Jose Builteman—instead clarifying that he sometimes texted Mr. Builteman about work, but in no way specifying that the two texted about the move of SMU detainees.  (See MTC at 18.)  Even if, as Defendant argues, Mr. Rodriguez and Mr. Builteman had texted about "professional activities" during the period related to the SMU move in October of 2020, such messages would not be responsive to RFP No. 71, which requested text messages and emails starting in February of 2021, the end of Plaintiff's detention at Imperial.  (See id.)

The Court agrees with Defendant's reasoning and finds that Defendant has met its burden of demonstrating that the requested discovery is not relevant to this category of requests.  Even if text messages between Mr. Rodriguez and Mr. Builteman exist that specifically discuss Plaintiff's transfer from the SMU to the general population dorm in October of 2020, RFP No. 71 does not request information from that time frame, instead focusing on communications after Plaintiff's detention.  Although texts between Mr. Rodriguez and Mr. Builteman during the SMU detainee transfer would almost certainly be relevant to Plaintiff's inquiry in this case, the Court declines to rewrite Plaintiff's discovery requests to conform to a particular time period.  Moreover, any communications related to Plaintiff's detention could have easily been asked about during Mr. Rodriguez's deposition.  The Court accordingly declines to compel Defendant to produce additional documents in response to this request.

### 2.   Witness testimony

Plaintiff contends that two instances of deposition testimony demonstrate that additional responsive documents have been withheld by Defendant related to the SMU transfer.  First, Mr. Rodriguez purportedly testified that the transfer was "based on 'a mutual understanding that we were going to try to keep [the protective custody detainees] out there in GP as long as we could," because they 'enjoyed their life on Mike Unit more

than they had their life in the hole.'" (MTC at 9.) Plaintiff contends that protective custody detainees were not transferred back to solitary confinement because of the completion of maintenance work on the SMU, but rather because of this "mutual understanding." (See id.)[12] In addition to the "mutual understanding" about the transfer that Plaintiff quotes from Mr. Rodriguez's testimony, Mr. Veloz purportedly testified that Defendant had a general population dorm where protective custody detainees could be housed from 2015 to 2020. (See J. Disc. Mot at 17:7-10.)

Defendant refutes both contentions. Quoting other parts of Mr. Rodriguez's testimony, Defendant notes that Mr. Rodriguez attributed the transfer to maintenance that was being performed on the SMU at the time. (See id. at 18:2-5.) Additionally, Defendant avers that Mr. Veloz's testimony did not concern the availability of alternative housing options for protective custody detainees—rather, that testimony referred to housing for "high and medium-high classification general population detainees" from 2015 to 2018. (See id. at 19.) Defendant further contends that Imperial's housing practice from 2015 to 2018 is irrelevant to Plaintiff's detention at the facility, which occurred from December 2019 to February of 2021. (See id.)

As an initial matter, the Court notes that with respect to this category of requests for production, the Joint Discovery Motion and accompanying briefs frame issues that are more appropriately addressed at the summary judgment stage. The parties vigorously quote deposition testimony, and implicit in their respective positions are arguments about whether deposition testimony proves that a more reasonable housing alternative existed during the time of the SMU transfer. The Court is not tasked with determining which

---

[12] At this point in their briefs, the parties drift into arguments about records concerning additional maintenance requests that were not presented to the Court in the instant motion to compel. (See MTC at 9:14-15; Opp'n at 6:26-7:5 ("Plaintiff, for the first time, demanded documents related to a COVID-related move in April 2020, a move of general population detainees in November of 2020, and an H-Unit work order from November 2020.").) The Court notes once again that a discovery determination by the Court must present *the exact wording* of the discovery request or deposition in dispute, as well as the *exact response* to the request or question. See Hon. Lupe Rodriguez, Jr. Civ. Chambers R. § IV.D.1.

party's arguments related to housing alternatives are more convincing at this stage in the litigation.  Plaintiff, however, has not sufficiently demonstrated that Defendant is withholding documents related to these requests.  Although Mr. Rodriguez does appear to acknowledge that the SMU detainees enjoyed the general population dorm, there are also several points during his testimony in which he acknowledges that the SMU transfer occurred while maintenance was being performed on the SMU.  (See, e.g., Leonida Decl., Ex. 18 at 182:18-20.)[13]  Additionally, in the Court's view, Mr. Veloz appears to discuss housing alternatives for high and medium-high custody detainees, rather than protective custody—and even notes that a separate policy existed for detainees who chose not to be placed in protective custody.  (See Rice Decl., Ex. 8 at 151:21-24.)[14]  Plaintiffs have therefore failed to demonstrate, by citing to this testimony, that Defendant has withheld any responsive documents related to Plaintiff's placement in the general population dorm in October of 2020.

Although the testimony cited by Plaintiff is insufficient to establish that Defendant has withheld documents related to this category, the Court nonetheless appreciates that Plaintiff has received a comparative lack of explanation as to why only a handful of responsive documents have been produced regarding the SMU transfer.  Defendant avers in a conclusory fashion that all documents have been produced, and cites to the declaration of Brian Robinson, which notes that "Defendant has produced everything it has relevant to Plaintiff's requests in this case," but that assertion appears to be tailored to the previously addressed category of requests regarding the SMU Committee's review of Plaintiff's detention.  (See Opp'n at 5 (citing Robinson Decl. ¶ 11).)  In contrast with the detail Defendant provided to explain the lack of documents in other categories, Defendant is notably silent as to any efforts to find responsive documents in this

---

[13] Internal pagination cited here.

[14] Internal pagination cited here.

21cv1770-GPC(LR)

category.[15]  Thus, although the Court declines to order Defendant to produce documents related to this request, Plaintiff is entitled to an explanation as to why such documents do not exist.  See Nutrition Distrib. LLC v. PEP Rsch., LLC, Case No.: 16CV2328-WQH-BLM, 2018 WL 3769162, at *11-12 (S.D. Cal. Aug. 9, 2018) (requiring a declaration detailing search methods when documents that were expected to be produced were missing without additional explanation).  If Defendant still contends that all documents relevant to this category have been produced, it must provide Plaintiff with a declaration containing a detailed explanation of the diligent efforts it made to obtain such documents.

Accordingly, Plaintiff's request for the Court to compel Defendant to produce documentation related to the SMU transfer is **GRANTED** for the limited purpose of Defendant explaining what efforts it made to find responsive documents.  Defendant must supplement its responses to this set of RFPs and provide the declaration, if required, on or before **December 16, 2022**.

**D.**   **Documents Related to Plaintiff's Conditions of Confinement and Access to Services**

These document requests, along with one interrogatory, relate to Plaintiff's access to services and activities while he was detained at Imperial.  (See J. Disc. Mot. at 20-21.) Their importance is not disputed between the parties—Plaintiff notes that under the PBNDS, detainees placed in administrative segregation must have access to services available to the general population to the maximum extent possible.  (See MTC at 6.) Plaintiff contends that deposition testimony by Edward Ruiz, Defendant's assistant facility administrator, identified "a host of additional missing documents responsive to

---

[15] It appears that the only communication Plaintiff received about these requests was an informal, two-line note in an email from Defendant's counsel about the SMU maintenance planning occurring in impromptu meetings.  (See J. Disc. Mot. at 17 (citing Leonida Decl., Ex. 17).)

RFP No. 30,[16] RFP No. 44,[17] and Interrogatory No. 11,[18] which have not yet been produced.  (Id. at 7.)  In addition to arguments countering Plaintiff's request to compel further production on these items, Defendant avers that these issues were not raised before the Court during the September 26, 2022 IDC, and are thus not ripe to be addressed in the instant motion to compel.  (See J. Disc. Mot. at 21.)  Although it would be reasonable to deny Plaintiff's motion on this basis alone, the Court will nevertheless reach the parties' other arguments and address the interrogatory and requests for production in turn.

### 1.    Interrogatory No. 11

Plaintiff contends that in response to this interrogatory, Defendant initially invoked its production of documents under Rule 33(d)—in which it appears that Defendant pointed Plaintiff to the PBNDS.  (See J. Disc. Mot. at 21-22.)  After Mr. Ruiz's deposition revealed "rosters, schedules, work program tracking sheets and other documentation" responsive to this interrogatory, however, Plaintiff avers that Defendant refused to produce such documents, referring Plaintiff back to its earlier production under Rule 33(d) and claiming that "[a]n interrogatory cannot be used as the basis for a request for documents."  (See id. at 21 (citing Leonida Decl., Ex. 20 at 1).)  Plaintiff argues that these statements are untenable—Defendant should either be required to produce records in compliance with Rule 33(d), or it should respond to Interrogatory 11 without complying with Rule 33(d), but "[i]t cannot simply decide to do neither."  (See id.)

---

[16] "All DOCUMENTS and COMMUNICATIONS RELATED TO any logs recording PLAINTIFF'S activities while in detention, including any visits received by PLAINTIFF."  (J. Disc. Mot. at 19.)

[17] This request apparently focuses on "recreation schedules" for the SMU during Plaintiff's confinement.  (See MTC at 6.)

[18] "Explain any restrictions on services and/or programming to which detainees in protective custody have access and the rationale(s), if any, for such restrictions."  (J. Disc. Mot. at 20.)

Defendant maintains that the Rule 33(d) document responsive to this interrogatory is the PBNDS.  (See Opp'n at 5.)  Arguing that an interrogatory cannot be used to compel the production of documents, Defendant notes that during meet and confer efforts,[19] Plaintiff clarified this interrogatory as asking for "'a description of restrictions' to various programs, which Defendant interpreted to mean restrictions on the availability of those programs and services as between general population and protective custody detainees." (See J. Disc. Mot. at 22.)  Defendant contends that Plaintiff has since confirmed this interpretation and explains that the responsive documentation to this interrogatory under Rule 33(d) is the PBNDS.  (See id.)

Here, the Court agrees with Plaintiff's position.  For a party to take advantage of the alternative procedure set forth in Rule 33(d) by making records available for inspection, "the burden of deriving or ascertaining the answer must be substantially the same for the party serving the interrogatory as for the party served and the party responding must specify *in sufficient detail* where the answers can be found."  Fresenius Med. Care Holding Inc. v. Baxter Int'l, Inc., 224 F.R.D. 644, 650 (N.D. Cal. 2004) (citing O'Connor v. Boeing N. Am., Inc., 185 F.R.D. 272, 277 (C.D. Cal. 1999)) (emphasis added).  Plaintiff has sufficiently demonstrated that Defendant's production of documents responsive to this interrogatory—if it decides to invoke Rule 33(d)—could be incomplete.  (See Leonida Decl., Ex. 10 at 68-69, 77-80, 88-91 (describing logs related to access, observation, and recreation).)  Although the Court declines to require Defendant to produce additional documents in response to this interrogatory, Rule 33 is clear about

---

[19] The Court notes that both parties represent different interpretations as to the outcome of previous IDCs on this topic before Judge Berg.  On one hand, Plaintiff cites to meet and confer correspondence in which it asserts that the Court ordered Defendant to "certify under oath, that [it] has produced documentation of any restrictions on services and or programming to which detainees in protective custody" had access to, or to produce additional documentation.  (See Leonida Decl. at 3.)  At the same time, however, Defendant appears to contend that "[d]isputes regarding this Interrogatory have already been resolved as between the parties and the Court at the June 10, 2022 IDC."  (See J. Disc. Mot. at 22.) Without the benefit of being present during the parties' discussions on this topic with Judge Berg, the Court must evaluate the parties' arguments based on the motion papers.

the options available to Defendant.  If Defendant contends that the PBNDS—and the PBNDS alone—is the responsive record related to this request, it should explain the reasoning behind this contention specific to the clarifications the parties agreed upon during their meet and confer efforts.  (See, e.g., J. Disc. Mot. at 22) (discussing clarification between the parties as to what a "description of restrictions" means).)  Defendant can also choose to supplement its production of documents with relevant records that are accompanied by similarly detailed explanations as to where the answer to Interrogatory No. 11 might be located.  Alternatively, Defendant can fully respond to Interrogatory No. 11 without reference to Rule 33(d).  Accordingly, and subject to the parameters outlined above, the Court **GRANTS** Plaintiff's motion to compel further responses related to this request.

### 2.    RFP No. 30 and RFP No. 44

In addition to its arguments related to Interrogatory No. 11, Plaintiff contends that logs related to these two requests for production are missing.  (See J. Disc. Mot. at 21.)  Acknowledging that at least some responsive documents were discovered during deposition testimony after the discovery cut-off, Defendant avers that "there are no additional responsive documents left to produce," and cites to the declaration of John Rice, which notes that Defendant has "worked diligently and quickly to produce any such missing documents."  (See Opp'n at 5 (citing Rice Decl. ¶ 5).)

As noted above, the Court cannot compel the production of documents that do not exist.  See Wright v. Old Gringo, Inc., Case No.: 17cv1996-BAS(MSB), 2019 WL 5685203, at *7 (S.D. Cal. Nov. 1, 2019) (citing Medina v. Cnty. of San Diego, Civil No. 08cv1252 BAS (RBB), 2014 WL 4793026, at *19 (S.D. Cal. Sept. 25, 2014)).  In light of Plaintiff's representation that logs and other records in response to these RFPs exist and have not yet been produced, however, as well as the comparative lack of information provided by Defendant to explain why the production of these documents were delayed, a conclusory statement that all additional responsive documents have been produced is insufficient.  (See Rice Decl. ¶ 5 ("all responsive documents have been produced."))

Defendant must supplement its response to RFP No. 44 and 30 to state whether additional responsive logs or records exist.  If—as Defendant contends—all responsive documents have been produced, Defendant must submit a declaration explaining the efforts it made to locate such documents, that all responsive documents have been produced, and *why* no additional information will be forthcoming related to these requests.  <u>See</u> 7 James Wm. Moore, et al., <u>Moore's Federal Practice</u> § 34.13[2][a], at 34-57 (3d ed. 2017) (providing that when a party responds to a document request with an answer, as opposed to production or an objection, the party must answer under oath) (footnote omitted); <u>see also</u> <u>SolarCity Corp. v. Doria</u>, Case No.: 16cv3085-JAH (RBB), 2018 WL 467898, at *7 (S.D. Cal. Jan. 18, 2018) ("If there are no other responsive documents in [d]efendant's possession, custody, or control, after conducting this further attempt to locate records, [the party resisting discovery] must state so under oath and describe efforts [the party] made to locate responsive documents.") (internal quotations omitted).

Accordingly, Plaintiff's request for the Court to compel Defendant to produce documentation related to Plaintiff's activities while incarcerated at Imperial is **GRANTED** for the limited purpose of Defendant explaining what efforts it made to find responsive documents related to RFPs No. 30 and 44, and supplementing its response to Interrogatory 11 by describing why the PBNDS is the appropriate document, providing Plaintiff with additional documents under Rule 33(d), or responding to the interrogatory without invoking Rule 33(d).  Defendant must supplement its responses to this set of requests and provide any declarations, if required, on or before **<u>December 16, 2022</u>**.

## E.   <u>Documents from Defendant's Headquarters</u>

This request was precipitated by deposition testimony in which Plaintiff contends that Mr. Robinson, Defendant's 30(b)(6) witness regarding document production, was apparently unaware of whether any search had been conducted at Defendant's corporate headquarters to locate responsive documents related to Plaintiff's detention at Imperial—particularly those related to the email account and devices of Dan Joslin, the regional vice president who oversees Imperial.  (<u>See</u> J. Disc. Mot. at 22.)  Plaintiff contends that both

Mr. Robinson and Mr. Joslin were unaware of any such search taking place, and that the Court should order Defendant to "conduct a search for all non-privileged, responsive documents located at [Defendant's] headquarters."  (See id. (citing deposition testimony).)

Defendant contends that it has explained its efforts to search its corporate headquarters during its meet and confer efforts with Plaintiff.  (See id.)  Citing deposition testimony explaining that Mr. Joslin does not have any recollection of receiving communications related to Plaintiff, Defendant notes that Mr. Robinson and Mr. Joslin's denial that any searches had taken place at Defendant's corporate headquarters was the result of confusion, rather than Defendant's failure to perform the search altogether.  (See id. at 23.)  Additionally, Defendant cites to a declaration by Mr. Petrogeorge explaining the efforts that were made to search for responsive documents related to Plaintiff at Defendant's corporate headquarters.  (See id. (citing Petrogeorge Decl. ¶ 8-9).)

Here, although Plaintiff's concern about Mr. Robinson and Mr. Joslin's lack of knowledge about the search of email servers could demonstrate that Defendant is attempting to withhold documents, the Court is satisfied that Defendant has performed a reasonable search for this information.  The declaration by Mr. Petrogeorge directly responds to Plaintiff's concerns arising from Mr. Joslin's lack of knowledge about the search of his emails at the corporation's headquarters and explains, in detail, how the search for those documents was performed.  (See Petrogeorge Decl. ¶ 5-9 (addressing the efforts that corporate counsel made to search for responsive documents related to Mr. Joslin).)  Accordingly, Plaintiff's request for the Court to order Defendant to conduct further searches for responsive documents in this category is **DENIED.**

### F.   Defendant's Rule 30(b)(6) Witnesses

Plaintiff contends that Defendant's previously designated 30(b)(6) witnesses on several topics unexpectedly assigned knowledge about thirteen issues to Mr. Robinson, who was later produced as a Rule 30(b)(6) witness with approximately two hours of preparation and after glancing at only a handful of documents.  (See MTC at 9.)  Among

the topics that Plaintiff contends Mr. Robinson was unprepared to testify on were Defendant's bases for rejecting Plaintiff's request to be transferred to a general population dorm, as well as Defendant's retention and collection of documents related to this lawsuit.  (See id. at 10.)

Defendant notes in response that although it cannot explain why its designated witnesses were unprepared to testify on a number of topics, it has worked diligently to supplement its discovery responses when Plaintiff expressed dissatisfaction with any of Defendant's answers.  (See Opp'n at 7-8.)  For instance, Defendant explains that it offered to reschedule Mr. Robinson's deposition for another day to "address Plaintiff's questions regarding document retrieval efforts."  (See id. at 8; see also J. Disc. Mot. at 24.)

As an initial matter, the deposition testimony cited by Plaintiff appears to demonstrate that Defendant's Rule 30(b)(6) witnesses were unprepared to discuss several previously designated topics.  (See, e.g., MTC at 9 (citing Leonida Decl., Ex. 10 at 29-39).)[20]  Because Defendant failed to meet its obligations under Rule 30(b)(6) to designate and properly prepare its witnesses to testify on these issues, the Court finds that good cause exists to grant Plaintiff additional deposition time to complete the Rule 30(b)(6) deposition.  Since the parties acknowledge at least some holes in Defendant's 30(b)(6) deposition testimony, however, and Defendant has expressed willingness to reschedule Mr. Robinson's deposition, a solution to this dispute is readily available.  The parties should meet and confer again about which of the thirteen topics Plaintiff brought to the Court's attention still have yet to be answered by Defendant's 30(b)(6) witnesses, and Defendant shall produce a knowledgeable witness, or witnesses, capable of providing meaningful testimony on these topics, including Defendant's bases for rejecting Plaintiff's requests to be transferred to a general population dorm and Defendant's

---

[20] Internal pagination cited here.

21

retention of documents.  These witnesses will be limited to three individuals—the number originally designated—if Defendant chooses to designate more than one person as a Rule 30(b)(6) witness.  The deposition(s) shall take place no later than **December 30, 2022**.  Accordingly, the Court **GRANTS** Plaintiff's motion to compel for the purpose supplementing its 30(b)(6) witnesses' testimony.

## G.   Plaintiff's Request for Sanctions

Plaintiff requests that the Court issue monetary and evidentiary sanctions to reimburse him for the costs associated with obtaining the discovery at issue in the Joint Discovery Motion and to address what he characterizes as repeated misconduct by Defendant during the discovery process.  (See MTC at 11-12.)  Specifically, Plaintiff requests that the Court:  (i) order Defendant to reimburse him for the fees he incurred during discovery in each of the categories above, along with the costs of bringing the instant motion to compel—$69,317 and $6,065 respectively; and (ii) issue a jury instruction that permits "an adverse inference from Defendant's intentional withholding of evidence."  (Id.)  Defendant counters that it has shown a continued willingness to cooperate with the discovery process, that it has not acted in bad faith during the course of discovery, and that Plaintiff's request for fees is unreasonable and unsupported by the attached declarations.  (Opp'n at 9-10.)

Under the rules governing motions to compel, if the Court were to grant the motion in full, the Court must "require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees" unless "the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;" "the opposing party's nondisclosure, response, or objection was substantially justified;" or "other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(a)(5)(A)(i–iii).  If the motion is denied, the court must "require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the

motion" unless "the motion was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B). Finally, if the motion is granted in part and denied in part, the court may, in its discretion, "apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C).

In addition to monetary sanctions under the Federal Rules of Civil Procedure, federal trial courts are vested with inherent powers that allow them to govern their courtrooms and the litigation processes they oversee. See Singleton v. Kernan, Case No.: 3:16-cv-2462-BAS-NLS, 2018 WL 5761688, at *2 (S.D. Cal. Nov. 1, 2018) (citing Chambers v. NASCO, 501 U.S. 32, 43 (1991)). Among those inherent powers is the discretion "to impose a wide range of sanctions when a party fails to comply with discovery or with court orders to provide or permit discovery." Adams v. Michaels Stores, Inc., No. CV 09–1939–GW (AGR), 2010 WL 4794485, at *1 (C.D. Cal. Oct. 22, 2010). The Court's inherent powers, however, must only be used "with restraint and discretion," Chambers, 501 U.S. at 44, and any sanctions issued must be "proportion[al] to the actual harm wrought by the failure to meet those discovery obligations." Google Inc. v. Am. Blind & Wallpaper Factory, Inc., No. C 03-5340 JF (RS), 2007 WL 1848665, at *6 (N.D. Cal. June 27, 2007). One example of these inherent powers is an adverse inference instruction, which may be appropriate where a party's bad faith or gross negligence has resulted in either the spoliation of evidence or failure to turn over relevant evidence. See Imagenetix, Inc. v. Robinson Pharma, Inc., Case No. SA CV 15-0599 JLS (JCG), 2017 WL 8940118, at *3 (citing Karnazes v. Cnty. of San Mateo, No. C 09–0767 MMC (MEJ), 2010 WL 2672003, at *2 (N.D. Cal. July 2, 2010)).

The Court finds that both types of sanctions are inappropriate. First, regarding Plaintiff's request for monetary sanctions, the Court is well within its discretion to deny such relief if the "movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action." Fed. R. Civ. P. 37(a)(5); see also Oakley, Inc. v. Neff, LLC, No. 15cv148–BAS (DHB), 2015 WL 5311392, at *5 (S.D. Cal. Sept. 11, 2015) (declining to issue sanctions when the parties did not comply with the meet and

confer requirements before filing the motion).  Numerous instances in the Joint Motion highlight the parties' failure to comply with the meet and confer requirement under Rule 37.  Further still, a majority of the requests addressed in the instant motion fail to comply with Judge Berg's chambers rules *requiring* the parties to bring any disputes to the attention of the Court through an IDC before moving to compel.  This Court's chambers rules contain the same requirements in all relevant respects—any further motions that do not fully comply with the rules regarding discovery disputes will immediately be struck and will not be considered further.

Second, and most importantly, even when the meet and confer requirements were technically complied with before filing the instant motion, the parties' briefs and correspondence attached in declarations throughout the papers make it abundantly clear that more effort could have gone into cooperatively discussing the contents of the Joint Motion.  (See, e.g., Opp'n at 1 (discussion about the parties complying with the process of filing the instant Joint Motion within the previously agreed upon briefing schedule).)  Both parties demonstrate clear disagreements with each other's interpretations of defined terms and other important clarifications related to many of Plaintiff's requests for the Court to compel the production of documents.  See, e.g., supra note 19 (discussing the parties' disagreements about the outcome of an IDC before Judge Berg related to whether additional documents needed to be produced in relation to Interrogatory No. 11).  The MTC, therefore, is insufficient to demonstrate that Defendant acted in bad faith or purposely interfered with witness testimony.  See, e.g., Alexis v. Rogers, Case No.: 15cv691-CAB (BLM), 2016 WL 7325415, at *8 (S.D. Cal. Dec. 16, 2016) (declining to impose monetary and evidentiary sanctions when the offending party supplemented its production and agreed to further depositions when new documents were revealed).  Rather, it appears that many of the alleged violations Plaintiff points to reflect genuine disagreements between the parties that justified Defendant's explanations about its attempts to locate responsive documents and objections to several categories of Plaintiff's requests.  See Yphantides v. Cnty of San Diego, Case No.: 21cv1575-GPC(BLM), 2022

WL 3362271, at *8 (S.D. Cal. Aug. 15, 2022) ("[d]iscovery conduct is substantially justified if it is a response to a genuine dispute or if reasonable people could differ as to the appropriateness of the contested action.") (internal quotations omitted).  The Court therefore declines to issue monetary sanctions.

Finally, because the Court finds that monetary sanctions should not be imposed, an adverse jury instruction is not proportional to the discovery disputes described in this order and would be prematurely addressed at this stage in the litigation.  Although the Court reserves the right to consider evidentiary sanctions—including adverse jury instructions—if Defendant is found to violate any discovery orders, the Court declines to impose such drastic measures at this juncture.  See Daniels v. Securitas Sec. Servs. USA, Inc., Case No. 8:18-cv-265-CJC (SK), 2022 WL 2101908, at *2 (C.D. Cal. Feb. 2, 2022) (declining to issue an adverse jury instruction but reserving the right to issue evidentiary sanctions if more serious violations were discovered); see also Fed. R. Civ. P. 37(b)(2)(A) (providing for a wide range of sanctions if a party does not obey a discovery order).  Plaintiff's motion for sanctions is accordingly **DENIED**.

## IV.   SUMMARY AND CONCLUSION

For the foregoing reasons, the Court:

(1)   **DENIES** Plaintiff's motion to compel Defendant to produce additional documents related to Defendant's communications with ICE;

(2)   **DENIES** Plaintiff's motion to compel Defendant to produce additional documents related to Defendant's reviews of Plaintiff's detention placement;

(3)   **GRANTS IN PART AND DENIES IN PART** Plaintiff's motion to compel Defendant to produce documentation related to the SMU transfer.  Defendant must explain what efforts it made to find responsive documents, supplement its responses to this set of RFPs, and provide a declaration about its efforts to locate responsive documents in this category, if required, on or before **December 16, 2022**;

(4)   **GRANTS IN PART AND DENIES IN PART** Plaintiff's motion to compel further responses to Plaintiff's requests related to Plaintiff's conditions of confinement

and access to services.  Defendant must supplement its response to Interrogatory No. 11 and provide a declaration about its efforts to locate responsive documents related to RFPs No. 30 and 44 on or before **December 16, 2022**;

(5)     **DENIES** Plaintiff's motion to compel Defendant to produce additional documentation from Defendant's headquarters;

(6)     **GRANTS** Plaintiff's motion to compel Defendant to make additional 30(b)(6) witness(es) available for deposition. The parties must meet and confer about which topics still need to be addressed by Defendant's 30(b)(6) witnesses, and Defendant should make up to an additional three witnesses available for depositions on this topic.  These depositions must take place by **December 30, 2022**; and

(7)     **DENIES** Plaintiff's motion for sanctions.

Defendant's responses as required by this motion should be made under oath by a person with knowledge.

**IT IS SO ORDERED.**

Dated:  December 1, 2022

_____

Honorable Lupe Rodriguez, Jr.
United States Magistrate Judge

26

21cv1770-GPC(LR)