JOHN J. RICE, ESQ. (Bar No. 140865)
ricej@higgslaw.com
CHANDLER C. ROTH, ESQ. (Bar No. 334206)
rothc@higgslaw.com
HIGGS FLETCHER & MACK LLP
401 West A Street, Suite 2600
San Diego, CA 92101-7910
Telephone: (619) 236-1551
Facsimile: (619) 696-1410

Attorneys for Defendant
MANAGEMENT & TRAINING CORPORATION

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

CARLOS MURRILLO VEGA,

Plaintiff,

v.

MANAGEMENT & TRAINING CORPORATION,

Defendant.

Case No. 3:21-CV-01770-GPC-LR

**MEMORANDUM IN SUPPORT OF DEFENDANT MANAGEMENT & TRAINING CORPORATION'S PARTIAL MOTION FOR SUMMARY JUDGMENT**

Date: April 21, 2023
Time: 1:30 p.m.
Ctrm: 2D
Judge: Hon. Gonzalo P. Curiel

## TABLE OF CONTENTS

Page

I. INTRODUCTION .... 4

II. STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW .... 4

A. THE PARTIES .... 4

B. PLAINTIFF'S DETENTION AT IMPERIAL REGIONAL DETENTION FACILITY .... 5

1. JANUARY 1, 2020 – OCTOBER 27, 2020 .... 5

2. OCTOBER 28, 2020 – NOVEMBER 10, 2020 .... 6

3. NOVEMBER 11, 2020 – FEBRUARY 6, 2021 .... 7

C. PLAINTIFF'S LAWSUIT .... 8

III. STANDARD ON MOTION FOR SUMMARY ADJUDICATION .... 9

IV. LEGAL ARGUMENT .... 9

A. PLAINTIFF'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM FAILS AS A MATTER OF LAW BECAUSE MTC'S CONDUCT WAS NOT EXTREME AND OUTRAGEOUS .... 9

B. PLAINTIFF'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM FAILS AS A MATTER OF LAW BECAUSE MTC DID NOT RECKLESSLY DISREGARD THE PROBABILITY OF CAUSING PLAINTIFF EMOTIONAL DISTRESS .... 10

C. PLAINTIFF'S PUNITIVE DAMAGES CLAIMS FAILS AS A MATTER OF LAW BECAUSE NO OFFICER, DIRECTOR, OR MANAGING AGENT ENGAGED IN OR AUTHORIZED CONDUCT CONSTITUTING MALICE, OPPRESSION OR FRAUD .... 12

1. PLAINTIFF'S PUNITIVE DAMAGES CLAIM IS INADEQUATELY PLED .... 13

2. ALTERNATIVELY, PLAINTIFF'S PUNITIVE DAMAGES CLAIMS FAILS FOR FAILURE TO IDENTIFY AN OFFICER, DIRECTOR, OR MANAGING AGENT WHO ENGAGED IN OR AUTHORIZED CONDUCT CONSTITUTING MALICE, OPPRESSION OR FRAUD .... 14

V. CONCLUSION .... 15

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 250 (1986) .......... 9

*Celotex Corp. v. Catrett* 477 U.S. 317, 322-325 (1986) .......... 9

*Christensen v. Superior Court* (1991) 54 Cal. 3d 868 .......... 10

*College Hospital, Inc. v. Superior Court* (1994) 8 Cal.4th 704, 723 .......... 13

*Cruz v. Homebase* (2000) 83 Cal. App. 4th 160, 167 .......... 13

*Fox v. Citicorp. Credit Servs.* 15 F.3d 1507, 1514 (9th Cir. 1994) .......... 9

*G.D. Seare & Co. v. Superior Court* (1975) 49 Cal. App. 3d 22, 29 .......... 13

*Hughes v. Pair* 46 Cal. 4th 1035, 1050-51 (2009) .......... 9

*Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal. 4th 965, 1014 .......... 10

*Roby v. McKesson Corp.* (2009) 47 Cal.4th 686, 714-715 .......... 12

*White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 573, 576-577 .......... 12

*Wilson v. Southern Calif. Edison Co.* (2015) 234 Cal.App.4th 123, 164 .......... 12

**STATUTES**

California Government Code Section 7320 .......... 4, 8, 12

California Civil Code Section 3294(b) .......... 4, 12, 14

Fed. R. Civ. P. 56(a) .......... 9

Fed. R. Civ. P. 56(c)(1) .......... 9

Defendant MANAGEMENT & TRAINING CORPORATION ("MTC") respectfully submits the following memorandum in support of its partial motion for summary judgment as to the Complaint of Plaintiff CARLOS MURILLO VEGA ("Plaintiff").

## I.

## INTRODUCTION

Plaintiff's Complaint describes three causes of action against MTC based on Plaintiff's detention and the denial of Plaintiff's request to move from protective custody to general population: (1) violation of Cal. Gov. Code Section 7320; (2) Negligence; and (3) Intentional Infliction of Emotional Distress. In his Prayer for Relief, Plaintiff generally seeks the imposition of punitive damages against MTC.

Below, MTC explains that Plaintiff's claim for punitive damages fails as a matter of law because no "officer, director, or managing agent" was involved in the denial of Plaintiff's request to move to general population, which allegedly harmed Plaintiff, as is required to impose punitive damages under California Civil Code section 3294(b). Further, MTC explains that Plaintiff's claim for Intentional Infliction of Emotional Distress is meritless and thus fails as a matter of law.

For these reasons, as discussed further below, MTC respectfully requests the Court summarily adjudicate the issues of punitive damages and Intentional Infliction of Emotional Distress in favor of MTC and against the Plaintiff.

## II.

## STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

### A. The Parties

MTC is a private corporation which owns and operates Imperial Regional Detention Facility (the "Facility"), located in Calexico, California, pursuant to a contract with U.S. Immigration & Customs Enforcement ("ICE"). (SSUMF No. 1). Plaintiff is a former detainee of the Facility. (SSUMF No. 2).

**B. Plaintiff's Detention at Imperial Regional Detention Facility**

Plaintiff was detained at the Facility from December 13, 2019 until February 6, 2021. (SSUMF No. 3). Upon his arrival at the Facility on December 13, 2019, Plaintiff requested, in writing, protective custody status based on his prior housing in a special needs yard ("SNY") at Calipatria State Prison. (SSUMF No. 4). On December 13, 2019, the Facility issued an Information Report, documenting Plaintiff's request and ordering protective custody placement. (SSUMF No. 5). On December 16, 2019, Facility Licensed Social Worker Brenda Casteau performed a Mental Health evaluation of Plaintiff; Plaintiff therein denied a history of psychiatric care or illness, denied current or past suicidal thoughts or ideation, and reported eating and sleeping well. (SSUMF No. 6). Plaintiff thereafter was seen by Ms. Casteau on a monthly basis, unless he expressly refused treatment, throughout the remainder of his detention. (SSUMF No. 7).

1. <u>January 1, 2020 – October 27, 2020</u>

On January 13, 2020, Plaintiff refused mental health treatment, stating he had no new concerns at the time. (SSUMF No. 8). On February 10, 2020, Plaintiff was seen by Ms. Casteau and denied suicidal or homicidal ideation or psychotic symptoms. (SSUMF No. 9). Further, Plaintiff made no complaints regarding his protective custody housing status. (SSUMF No. 10). On March 6, 2020, Plaintiff refused mental health treatment, stating he was not interested in services and was well. (SSUMF No. 11). On April 1, 2020, Plaintiff was seen by Ms. Casteau and denied suicidal ideation or psychotic symptoms and made no complaints regarding his protective custody housing status. (SSUMF No. 12). On April 29, 2020, Plaintiff refused mental health treatment, citing concerns regarding COVID-19. (SSUMF No. 13). On May 27, 2020, Plaintiff was seen by Ms. Casteau, denied suicidal ideation or psychotic symptoms, and made no complaints regarding his protective custody housing status. (SSUMF No. 14). On June 26, 2020, Plaintiff was seen by Ms. Casteau, denied suicidal ideation or psychotic symptoms, reported he was doing well,

and had been busy watching television, going to recreation with others, and attending Bible study. (SSUMF No. 15). Plaintiff made no complaints regarding his protective custody housing status to Ms. Casteau on June 26, 2020. (SSUMF No. 16). On July 24, 2020, Plaintiff was seen by Ms. Casteau, denied suicidal ideation or psychotic symptoms, reported coping well, exercising, and engaging with peers. (SSUMF No. 17). Plaintiff made no complaints regarding his protective custody housing status to Ms. Casteau on July 24, 2020. (SSUMF No18). On August 21, 2020, Plaintiff was seen by Ms. Casteau, denied suicidal ideation or psychotic symptoms, denied any "issues or concerns", and discussed attending religious services led by the Chaplain. (SSUMF No. 19). Plaintiff made no complaints regarding his protective custody housing status to Ms. Casteau on August 21, 2020. (SSUMF No. 20). On September 18, 2020, Plaintiff was seen by Ms. Casteau, denied suicidal ideation or psychotic symptoms, spoke of his spiritual wellbeing, exercising, engaging with peers, and working in the dorm. (SSUMF No. 21). Plaintiff reported he was doing well overall and made no complaints regarding his protective custody housing status. (SSUMF No. 22). On October 15, 2020, Plaintiff was seen by Ms. Casteau, denied suicidal ideation or psychotic symptoms, reported doing well, and made no complaints regarding his protective custody housing status. (SSUMF No. 23).

    2.    <u>October 28, 2020 – November 10, 2020</u>

On October 28, 2020, Plaintiff was interviewed and advised of his imminent temporary rehousing into a 68-bed open dormitory (the "Mike" dorm) due to scheduled maintenance of the Special Management Unit ("SMU"), where protective custody detainees were housed. (SSMUF No. 24). On November 10, 2020, the SMU was reactivated, and Plaintiff was transferred back. (SSUMF No. 25). Following his return to the SMU, Plaintiff began submitting written requests and grievances to be transferred to a general population unit. (SSUMF No. 26).

/ / /

/ / /

3. November 11, 2020 – February 6, 2021

On November 11, 2020, Plaintiff, for the first time, submitted a written request to move to the Mike dorm and receive a cell to himself. (SSUMF No. 27). On November 12, 2020, Plaintiff refused mental health treatment. (SSUMF No. 28). On November 19, 2020, Plaintiff was seen by Ms. Casteau, denied suicidal ideation or psychotic symptoms, but expressed frustration after returning to the SMU and told Ms. Casteau that he had submitted a written request to be released into general population. (SSUMF No. 29). That same day, Plaintiff submitted a grievance stating, among other things, that he was "tired of being in the SMU" and asked how to move to the 68-bed Mike dorm. (SSUMF No. 30). On November 20, 2020, Plaintiff submitted a grievance to ICE requesting to move to the general population, stating "I'm tired of being in the [SMU] the only reason I'm here is because I didn't think that my case was going to take this long, but next month it will be a year I want to be able to have more free time. My paper work [sic] is clean. Please look into my request." (SSUMF No. 31). That same day, Facility staff responded to Plaintiff's grievance, explaining that Plaintiff's request was considered by the SMU-Committee on November 18, 2020, elevated to ICE, and ultimately denied. (SSUMF No. 32). Facility staff explained that "based on [Plaintiff's] initial request to be placed on PC status and the length of time [Plaintiff] spent under this status, [Plaintiff's] placement in the General Population – High Custody [was] not considered to be a safe environment for [Plaintiff]." (SSUMF No. 33).

On December 16, 2020, Plaintiff was seen by Ms. Casteau, denied suicidal ideation or psychotic symptoms, discussed his immigration case and his mother's improved health, and made no complaints regarding his protective housing custody status. (SSUMF No. 34). Plaintiff was seen by Ms. Casteau, for the last time before his release, on January 14, 2021, denied suicidal ideation or psychotic symptoms, expressed frustration about a prior tooth pain, described getting along with his peers, and ultimately made no complaints regarding his protective housing custody status.

(SSUMF No. 35). Plaintiff was released from the Facility on February 6, 2021. (SSUMF No. 36).

**C. Plaintiff's Lawsuit**

On or about October 14, 2021, Plaintiff filed the instant action alleging, (1) violation of Cal. Gov. Code Section 7320; (2) Negligence; and (3) Intentional Infliction of Emotional Distress. (SSUMF No. 37). In his Prayer for Relief, Plaintiff asserts an entitlement to the imposition of punitive damages against MTC. (SSUMF No. 38). Plaintiff's Complaint fails to identify an officer, director, or managing agent of MTC alleged to have engaged in, or authorized, conduct constituting malice, oppression, or fraud. (SSUMF No. 39). Plaintiff's Complaint fails to even include a boilerplate allegation that an officer, director, or managing agent of MTC engaged in or authorized conduct constituting malice, oppression, or fraud. (SSUMF No. 40).

Plaintiff's first cause of action for violation of Cal. Gov. Code Section 7320 does not identify or allege an officer, director, or managing agent engaged in or authorized any of the alleged violations of MTC's contract with ICE. (SSUMF No. 41). The first cause of action fails to specifically allege any conduct constituting malice, oppression, or fraud on behalf of MTC, and fails to state an entitlement to punitive damages against MTC. (SSUMF No. 42).

Plaintiff's second cause of action for Negligence does not identify or allege an officer, director, or managing agent engaged in or authorized any of the alleged violations of MTC's contract with ICE. (SSUMF No. 43). The second cause of action fails to specifically allege any conduct constituting malice, oppression, or fraud on behalf of MTC, and fails to state an entitlement to punitive damages against MTC. (SSUMF No. 44).

Plaintiff's third cause of action for Intentional Infliction of Emotional Distress does not identify or allege an officer, director, or managing agent engaged in or authorized any of the alleged violations of MTC's contract with ICE. (SSUMF No. 45). The third cause of action fails to specifically allege any conduct constituting

malice, oppression, or fraud on behalf of MTC, and fails to state an entitlement to punitive damages against MTC. (SSUMF No. 46).

## III.

## STANDARD ON MOTION FOR SUMMARY ADJUDICATION

Defendant is entitled to summary adjudication if it demonstrates that no genuine dispute of material fact exists, and it is legally entitled to judgment. Fed. R. Civ. P. 56(a), (c)(1). This results if Defendant negated an element essential to Plaintiff's claim, showing there is no evidence supporting an essential element, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-325 (1986), or when there are no genuine fact disputes on an affirmative defense. *Fox v. Citicorp. Credit Servs*., 15 F.3d 1507, 1514 (9th Cir. 1994). Once Defendant meets this burden, the burden shifts to Plaintiff to set forth "specific facts" to establish that a genuine issue as to a material fact actually exists. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986).

## IV.

## LEGAL ARGUMENT

### A. Plaintiff's Intentional Infliction of Emotional Distress Claim Fails as a Matter of Law Because MTC's Conduct Was Not Extreme and Outrageous

A claim for intentional infliction of emotional distress requires: (1) extreme and outrageous conduct by the defendant; (2) severe or extreme emotional distress; and (3) actual and proximate cause. *Hughes v. Pair*, 46 Cal. 4th 1035, 1050-51 (2009). Conduct is "outrageous" when it is so "extreme as to exceed all bounds of that usually tolerated in a civilized community." *Ibid.* Liability "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Ibid.* Instead, the defendant's conduct must be "intended to inflict injury or engaged in with the realization that injury will result." *Ibid* (emphasis added).

Here, Plaintiff cannot establish extreme and outrageous conduct by MTC. Plaintiff was housed in the SMU as protective custody status per his written request. After 11 months in protective custody, MTC, at the direction of ICE, denied

Plaintiff's request to be moved to general population in an attempt to prioritize Plaintiff's safety and security over his frustration regarding the length of his immigration case and his desire to have more free time while detained. Importantly, there is no evidence that the circumstances leading to Plaintiff's request for protective custody upon his arrival at the facility in December 2019 had changed, or that it was any safer for him to be housed in general population in November 2020 than it was upon his arrival at the facility in December 2019. That is far from extreme and outrageous and insufficient as a matter of law to constitute a tortious act, let alone a tortious act that violates the standards of care set forth in MTC's contract with ICE.

**B. Plaintiff's Intentional Infliction of Emotional Distress Claim Fails as a Matter of Law Because MTC Did Not Recklessly Disregard the Probability of Causing Plaintiff Emotional Distress**

In *Christensen v. Superior Court*, the California Supreme Court held "'[t]he law limits claims of intentional infliction of emotion distress to egregious conduct *toward plaintiff* proximately caused by defendant.' [Citation.] The only exception to this rule is that recognized when the defendant is aware, but acts with reckless disregard, of the plaintiff and the probability that his or her conduct will cause severe emotional distress to that plaintiff. [Citations.] Where reckless disregard of the plaintiff's interests is the theory of recovery, the presence of the plaintiff at the time the outrageous conduct occurs is recognized as the element establishing a higher degree of culpability which, in turn, justifies recovery of greater damages by a broader group of plaintiffs than allowed on a negligent infliction of emotional distress theory. [Citation.]" (*Christensen v. Superior Court* (1991) 54 Cal. 3d 868, italics in original.) In California, "[a] defendant's conduct is in reckless disregard of the probability of causing emotional distress if [defendant] has knowledge of a high degree of probability that emotional distress will result and acts with deliberate disregard of that probability or with a conscious disregard of the probable results." (*Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal. 4th 965, 1014, quoting BAJI No. 12.77 (1992 re-rev.) (7th ed. pocket pt.) p. 27.)

     Here, Plaintiff claims that MTC's denial of Plaintiff's request to move to general population after 11 months in protective custody "was extreme and outrageous conduct, taken with reckless disregard for the probability of causing [Plaintiff] emotional distress." (NOL, Exhibit 1 at ¶ 63.) Plaintiff further alleges that MTC was "aware of the deleterious effects of [housing in the SMU] on [Plaintiff's] mental health in particular, as [Plaintiff] repeatedly expressed his frustrations and anguish to MTC employees during his prolonged isolation." (NOL, Exhibit 1 at ¶ 65.) As alleged by Plaintiff, MTC denied Plaintiff's request to move to general population, "knowing that doing so would likely cause [Plaintiff] to suffer extreme mental distress." (NOL, Exhibit 1 at ¶ 66.) The record, however, tells a very different story. Indeed, MTC staff at the Facility did not disregard Plaintiff's mental health in any respect, as he received monthly mental health treatment sessions with a licensed professional and received regular, if not daily, access to recreation, socialization, employment, education, and religious services

     Unless he specifically refused treatment, Plaintiff received private monthly mental health sessions with Ms. Casteau, a licensed social worker. It is undisputed that Plaintiff made no complaints to Ms. Casteau about his protective custody housing status for 11 months. According to Ms. Casteau, she and Plaintiff had a quality trust relationship, and Plaintiff would tell her jokes and engage with Ms. Casteau outside of their treatment sessions. (NOL, Exhibit 28.) Only after his temporary stint in the open dormitory, did Plaintiff express frustration regarding his housing status and even then, after a short period of dissatisfaction, ceased stating such frustration to Ms. Casteau, and ceased filing related grievances and requests to MTC staff.

     Plaintiff's conclusory allegations that MTC acted with reckless disregard for his mental health is contradicted by the record. His mental health was monitored by a licensed professional on a consistent basis and never raised concerns. He never once reported suicidal ideation, he was never referred to the psychiatrist, and was regularly

identified as communicating his emotions appropriately. Finally, allegations of repeated expressions of frustration and anguish are clearly dispelled by Plaintiff's mental health records, grievances, and requests, emphasizing a clear and temporary expression of frustration only immediately following his transfer from his temporary stay in the 68-bed open dormitory back into the SMU.

Thus, MTC did not recklessly disregard Plaintiff's mental health or the likelihood of mental distress, but rather, regularly ensured his well-being via consistent and well documented mental health treatment sessions.

**C. Plaintiff's Punitive Damages Claims Fails as a Matter of Law Because No Officer, Director, or Managing Agent Engaged in or Authorized Conduct Constituting Malice, Oppression or Fraud**

As a threshold matter, MTC presumes that Plaintiff's vague prayer for punitive damages applies to the second and third causes of action only, as punitive damages are not recoverable for claims arising from contract, as alleged in the first cause of action for violation of Cal. Gov. Code section 7320. (*See* Cal. Civ. Code section 3294(a).)

Under California Civil Code section 3294, subdivision (b):

> "An employer shall not be liable for [punitive] damages. . . based upon acts of an employee of the employer, unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard for the rights or safety of others, or authorized or ratified the wrongful conduct for which the damages are awarded, or was personally guilty of oppression, fraud, or malice. **With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation."** (Emphasis added).

California Civil Code Section 3294(b) was intended to apply to those "who in fact exercise substantial authority over decisions that ultimately determine corporate policy." (*White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 573, 576-577; *Roby v. McKesson Corp*. (2009) 47 Cal.4th 686, 714-715; *Wilson v. Southern Calif. Edison Co.* (2015) 234 Cal.App.4th 123, 164; California Civil Code Section 3294(b).)

"Corporations are legal entities which do not have minds capable of recklessness, wickedness, or intent to injure or deceive. An award of punitive damages against a corporation therefore must rest on the malice of the corporation's employees. But the law does not impute every employee's malice to the corporation. Instead, the punitive damage statute requires proof of malice among corporate leaders." (*Cruz v. Homebase* (2000) 83 Cal. App. 4th 160, 167.) "[I]n performing, ratifying, or approving the malicious conduct, the agent must be acting as the organization's representative, not in some other capacity." (*College Hospital, Inc. v. Superior Court* (1994) 8 Cal.4th 704, 723.)

"Notwithstanding relaxed pleading criteria, certain tortious injuries demand firm allegations.... When the plaintiff alleges an intentional wrong, a prayer for exemplary damage may be supported by pleading that the wrong was committed willfully or with a design to injure. [Citation.] When nondeliberate injury is charged, allegations that the defendant's conduct was wrongful, willful, wanton, reckless or unlawful do not support a claim for exemplary damages; such allegations do not charge malice. [Citations.] When a defendant must produce evidence in defense of an exemplary damage claim; fairness demands that he receive adequate notice of the kind of conduct charged against him." *G.D. Seare & Co. v. Superior Court* (1975) 49 Cal. App. 3d 22, 29.

1. Plaintiff's Punitive Damages Claim is Inadequately Pled

Plaintiff's Complaint fails to adequately allege specific facts establishing corporate leaders at MTC acted with malice, oppression or fraud. In fact, none of the causes of action to Plaintiff's Complaint even assert an entitlement to punitive damages. Simply put, Plaintiff's Complaint makes no effort at alleging *any* conduct constituting malice, oppression or fraud as is required for the imposition of punitive damages, and instead merely includes, for the first time, punitive damages in the Prayer for Relief. For that reason alone, the claim for punitive damages should fail.

/ / /

Even if, *arguendo*, such allegations were made, the Complaint nevertheless is devoid of a single allegation that an officer, director, or managing agent of MTC knew of, ratified, or participated in conduct sufficient to support the imposition of punitive damages. Thus, Plaintiff's claim for punitive damages fails as a matter of law.

2. Alternatively, Plaintiff's Punitive Damages Claims Fails for Failure to Identify an Officer, Director, or Managing Agent Who Engaged in or Authorized Conduct Constituting Malice, Oppression or Fraud

In the 16 months since Plaintiff filed his Complaint, he has served four (4) sets of Requests for Admissions, four (4) sets of Requests for Production, and three (3) sets of Interrogatories, inspected the Facility, and deposed eight (8) MTC employees, including a corporate regional vice president. To date, MTC has produced 29,273 pages in discovery. (Rice Decl. ¶ 3). Still, despite this extensive and comprehensive discovery, Plaintiff has been unable to identify a single officer, director, or managing agent who participated in or ratified conduct constituting malice, oppression or fraud with respect to Plaintiff's detention or the denial of his request to move to general population. (Rice Decl. ¶ 3).

Importantly, Plaintiff cannot. (NOL, Exhibit 28 at ¶¶ 5-6). The "corporate leaders" at MTC do not make, or otherwise ratify, decisions regarding individual detainee's detention or housing. (NOL, Exhibit 28 at ¶¶ 5-6). Further, discovery has demonstrated that no officer, director, or managing agent was involved in or ratified any decisions regarding Plaintiff's detention or his request to move. Plaintiff therefore fails to meet the stringent requirements of California Civil Code section 3294(b) and his prayer for punitive damages fails as a matter of law.

/ / /

/ / /

/ / /

/ / /

/ / /

V.

**CONCLUSION**

For the foregoing reasons, Defendant, Management & Training Corporation respectfully request this Court grant its Partial Motion for Summary Judgment.

Dated: February 23, 2023

HIGGS FLETCHER & MACK LLP

By: */s/ John J. Rice*
JOHN J. RICE
CHANDLER C. ROTH
Attorneys for Defendant
MANAGEMENT & TRAINING CORPORATION