JOHN J. RICE, ESQ. (Bar No. 140865)
ricej@higgslaw.com
CHANDLER C. ROTH, ESQ. (Bar No. 334206)
rothc@higgslaw.com
**HIGGS FLETCHER & MACK LLP**
401 West A Street, Suite 2600
San Diego, California 92101-7910
Telephone:  (619) 236-1551
Facsimile:   (619) 696-1410

Attorneys for Defendant
MANAGEMENT & TRAINING CORPORATION

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS MURRILLO VEGA,<br><br>    Plaintiff,<br><br>v.<br><br>MANAGEMENT & TRAINING CORPORATION,<br><br>    Defendant. | Case No. 3:21-CV-01770-GPC-LR<br><br>**REPLY ON DEFENDANT MANAGEMENT & TRAINING CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:   April 21, 2023<br>Time:   1:30 p.m.<br>Ctrm:   2D (2nd Floor)<br>District Judge: Hon. Gonzalo P. Curiel |

# I.

# **INTRODUCTION**

Plaintiff claims *intentional* infliction of emotional distress and seeks punitive damages, asserting that Defendant Management & Training Corporations ("MTC") was *overly* protective when it kept him in protective custody out of safety concerns. Although the undisputed evidence establishes MTC complied with its contractual obligations with Immigration and Customs Enforcement ("ICE"), Plaintiff argues MTC should have done *more*. In his Opposition, Plaintiff asserts, as fact, inaccurate and argumentative statements unsupported by any evidence. Plaintiff inappropriately imputes percipient witness testimony to MTC, misstates the evidence, and deceptively cites witness testimony out of context in support of his supposed "additional material facts." Plaintiff's makes irrelevant and improper responses and objections to MTC's Separate Statement of Uncontroverted Facts, at times conceding the fact is, in fact, undisputed but arguing relevance, and at other times, disputing a fact without accurate evidentiary support. This conduct runs afoul of this Court's Chamber Rules[1]. Plaintiff's Opposition contains both incorrect and vague citations to the record and at times, uses ambiguous reference citations (e.g., *supra*) where it is unclear what actual evidence is being cited. Plaintiff's Opposition is nothing more than emotional *argument*, devoid of facts adequate to raise triable issues of material fact to defeat summary judgment.

Plaintiff fails to effectively refute the positions articulated in MTC's moving papers, which MTC incorporates by reference herein. MTC reiterates its entitlement to partial summary judgment for the following three reasons:

1. MTC did not engage in extreme and outrageous conduct with respect to Plaintiff by housing Plaintiff in protective custody for safety reasons;

---

[1] "The parties should avoid using the separate statements as a means of presenting or repeating legal arguments that are or should be made in the memorandum of points and authorities in opposition to the motion for summary judgment." Here, after seeking MTC's consent to file a separate statement in excess of the Court's 15-page limit, Plaintiff copies and pastes legal arguments throughout his separate statement, even when conceding facts are undisputed.

2. MTC did not recklessly disregard Plaintiff's mental health; and

3. Marrero, Ruiz, and Robinson are not officers, directors, or managing agents exercising substantial discretionary authority over decisions that determine corporate policy.

## II.

## DISCUSSION

**A.    MTC Did Not Engage in Extreme and Outrageous Conduct.**

Plaintiff relies on the unpublished case of *Rivera v. Bogden*, 2018 WL 4258501 (D. Nev. Sept 6, 2018), for the proposition that placement in "solitary confinement" for almost a year is extreme and outrageous conduct. (Oppo. at p. 12.) As a threshold matter, IRDF does not place detainees in "solitary confinement"; rather it has a special management unit ("SMU") that balances the need for protective custody with procedures that allows detainees access to programs and facilities like those in general population. Further, the instant litigation is not analogous to that of *Rivera*, wherein the plaintiff was placed in solitary confinement, denied counsel and an opportunity to present his case to a judge. (*Rivera, supra,* at *3.) Here, Plaintiff encountered no such circumstances.  Plaintiff's detention was not "something akin to being locked up and forgotten" as was *Rivera*'s. (*Ibid.*) Indeed, Plaintiff received daily checks, monthly private mental health sessions with Ms. Casteau, a licensed social worker, watched television, went to recreation with other detainees, exercised, worked two jobs, and attended religious services and Bible study. (MTC Exhibits 4-15; Exhibits 21-22; and Exhibits 25-26.)

Plaintiff's allegations of extreme and outrageous conduct are woefully inadequate and are unsupported by evidence. For example:

- Plaintiff claims MTC failed to identify a specific threat to Plaintiff's safety in the general population. In essence, Plaintiff suggests MTC should have ignored Plaintiff's unsolicited request for protective custody and glosses over Plaintiff's own articulated fear of the general population. (Plaintiff Exhibit 4,

269:14-23.) Plaintiff also fails to address the fact that the PBNDS specifically states that protective custody is required when requested by a detainee and ignores the fact that ICE refused Plaintiff's request to go the general population after **10 months** in protective custody. (Plaintiff Exhibit 22 at V(A)(1)(c).)

- Plaintiff claims MTC used administrative segregation as a default solution for protective custody detainees "even though its written policy only allows it as a last resort." (Oppo. at p. 12.) Here, Plaintiff misstates the evidence. MTC's policies are based on the PBNDS, which are created by ICE. (Plaintiff Exhibit 20, 134:10-15.) Importantly, the PBNDS nowhere states that housing protective custody detainees in administrative segregation can only be done as a "last resort." (Plaintiff Exhibit 20, 139:10-19.) Plaintiff is merely parroting this phrase which his expert created out of whole cloth and admitted was not taken from the PBNDS. (Hansen Report ¶57.).

- In support of his claim that he was uninformed about the nature of protective custody at IRDF, Plaintiff not only improperly imputes percipient witness[2] testimony to the corporation but takes the same out of context. Indeed, the citations to the Rodriguez testimony in Plaintiff's Exhibit 1 show a *general* discussion of Mr. Rodriguez's *personal* process in describing what protective custody is like at IRDF and does not discuss Plaintiff specifically. (Plaintiff Exhibit 1, 76:12-77:11.) Additional evidence offered to support this assertion does not establish a failure to educate Plaintiff on the nature of protective custody at IRDF. (Plaintiff AMF Nos.10, 13-15.) This argument also ignores the basic fact that regardless of what Plaintiff was told about the nature of protective custody, after only a few days he knew precisely what it consisted of yet made no written request to go to general population for 10 months, despite his clear understanding of how to do so.

- Plaintiff's claim that MTC failed to offer safe housing options other than

---

[2] Indeed, Plaintiff imputes the testimony of a *former* MTC employee to the corporation.

administrative segregation again glosses over Plaintiff's own articulated fear of the general population, which MTC honored. (Plaintiff Exhibit 4, 269:14-23.) Plaintiff again cites deposition testimony out of context to argue that a MTC witness said placement in an open dorm near the guard station was an alternative to administrative segregation available for Plaintiff. (Plaintiff Exhibit 4, 155:16-159:23.) Rather, the cited testimony of Ramon Veloz explains steps taken by the Prison Rape Eliminator Act ("PREA") coordinators to ensure detainees at risk of victimization are safely placed within their respective housing units. (*Id.*).[3]  No MTC witness testified that there were alternatives to the special housing unit for detainees requesting protective custody because no such alternatives existed nor are they required by the PBNDS.

- Plaintiff's claim that MTC failed to conduct the required individualized assessment regarding Plaintiff's continued placement in the SMU is another claim that is based not on an alleged violation of the PBNDS standards, but on an assertion that MTC should have gone above and beyond its contractual obligations. Plaintiff and his expert acknowledge all of the ways in which MTC complied with the PBNDS (e.g., the weekly administrative segregation reviews and weekly SMU committee meetings), and then argue, without factual or legal support, that MTC should have done more. It is undisputed Plaintiff requested protective custody, articulating a fear of the general population, and IRDF staff prioritized the safety of Plaintiff and the facility by granting that request.

- Plaintiff claims he made repeated requests to leave the SMU, which were improperly denied.[4]  This action, Plaintiff alleges, constituted extreme and

---

[3] Plaintiff's prison expert admitted during his deposition that he too cited Veloz's testimony incorrectly on this very point.

[4] It is undisputed that the first documented request by Plaintiff to leave protective custody took place 10 months after his original requested placement in protective custody. (MTC Exhibit 20.)

outrageous conduct by MTC; however, Plaintiff fails to present *any* evidence suggesting Plaintiff's requests were either ignored or improperly denied. (Plaintiff AMF Nos. 23-26, 33, 34.) Further, in his Separate Statement, Plaintiff misrepresented the evidence he does cite, claiming his request for protective custody and the length of Plaintiff's stay therein were the only reasons for his continued placement, when the evidence clearly states: "Reasons for your request being declined are that of safety and security of yourself and the facility," and Plaintiff's "placement in the General Population – High Custody is not considered to be a safe environment." (Plaintiff Exhibit 9.)

Plaintiff's further allegation that MTC adopted a *de facto* policy that a detainee in protective custody can never return to the general population is purely argument and unsupported by evidence. Plaintiff's allegation that MTC "implemented a defective system of policies and procedures that prioritized profits" over integrated housing and "appropriate staff to conduct meaningful periodic reviews of detainees' housing" is supported by a wholly inadmissible report by the Office of Inspector General and the opinions of Plaintiff's expert relying on the same inadmissible report.

Plaintiff was not tricked into protective custody. IRDF staff accepted Plaintiff's *request* for protective custody, citing his prior housing placement in prison and his fear of the general population. Importantly, given the added expense involved in maintaining a detainee in protective custody as opposed to general population, MTC had an incentive to encourage detainees to go to general population whenever feasible. After Plaintiff's placement in the SMU based on his request, IRDF staff regularly interacted with Plaintiff, checked on his wellbeing, and afforded him opportunities – as is their obligation – to socialize, exercise, practice his religion, and more. The facility kept Plaintiff safe throughout the duration of his detention. Surely,

---

The lack of a written request is especially significant since Plaintiff was a frequent user of the written request procedure at MTC and availed himself to this process early and often.

1  if ICE had permitted MTC to have Plaintiff released to the general population after
2  10 months in protective custody and he was assaulted, he would now be arguing that
3  MTC did not do enough to keep him safe.

4  MTC did not engage in extreme and outrageous conduct with respect to
5  Plaintiff's detention or his request to move to the general population. Accordingly,
6  Plaintiff cannot meet his *prima facie* case for Intentional Infliction of Emotional
7  Distress and MTC is entitled to adjudication of this claim in its favor.

8  **B.   MTC Did Not Act with Reckless Disregard to Plaintiff's Mental Health.**

9  Plaintiff claims, again without evidentiary support, that "the evidence
10 establishing that prolonged periods in isolation are likely to result in emotional
11 distress is well-established and well known." (Oppo at p. 15.) This faulty assertion
12 underlies Plaintiff's entire claim for emotional distress damages. Plaintiff vaguely
13 claims MTC and IRDF employees are *all* aware of this "well known" "evidence"
14 and recklessly disregarded it by placing Plaintiff in protective custody at his request
15 and later supporting ICE's decision to reject his request to go to general population
16 after 10 months in protective custody due to safety concerns. In doing so, Plaintiff
17 again improperly imputes percipient witness testimony – this time, that of Ms.
18 Casteau, the licensed social worker[5] – to the corporate defendant. (Oppo at 15:9-
19 12.) Plaintiff further relies on inadmissible reports by the California Department of
20 Justice and ICE Office of Inspector General.

21 Plaintiff cites *Elena v. Reliance Standard Life Insurance Company*, 2022 WL
22 1174107 (S.D. Cal. Apr. 20, 2022) and *Miller v. Nat'l Broad. Co.* (1986) 187 Cal.
23 App. 3d 1463 for the proposition that "little or no thought" constitutes "reckless
24 disregard" and *KOVR-TV, Inc. v. Superior Ct.* (1995) 31 Cal. App. 4th 1023 to make

---

[5] Plaintiff mischaracterizes Ms. Casteau's testimony at several points throughout his Opposition. For example, Plaintiff alleges Ms. Casteau testifies that she had challenges building a trusting relationship with detainees and that she did not develop a trust relationship with Plaintiff. Rather, review of the cited (and conspicuously not cited) portions of Ms. Casteau's testimony reveals that Plaintiff has misrepresented the nature of Ms. Casteau's statements. Indeed, Ms. Casteau testified that she felt she did have a trusting relationship with Plaintiff.

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

11560108.1

- 7 -                                        Case No. 3:21-CV-01770-GPC-LR

clear that "it is not essential to liability that the trier of fact find a malicious or evil purpose." Plaintiff repeats the same unsupported allegations addressed in Section A, *supra*, claiming MTC generally acted with reckless disregard to the "known harms of prolonged isolation." These arguments fail again for lack of evidentiary support.

Even applying the lesser standard that Plaintiff posits, Plaintiff cannot meet his burden. There is no credible evidence that MTC acted with malicious or evil purpose or somehow gave little or no thought to Plaintiff's wellbeing. Plaintiff alleges he filed numerous complaints but fails to set forth any evidence that these complaints were ignored. Indeed, Plaintiff always received a timely response from IRDF staff to his requests and grievances. (MTC Exhibits 19, 20, 23, 24; Plaintiff's Exhibits 6-17, 28-25.) Plaintiff had monthly mental health appointments with a licensed mental health professional, yet Plaintiff claims that these "do not make the underlying misconduct any less reckless." (Oppo at 16:18-19.) Plaintiff cannot meet its burden since MTC's actions complied with and exceeded the requirements of the PBNDS. Plaintiff broadly alleges that MTC staff failed to take appropriate steps to address the emotional distress they "inflicted upon" Plaintiff without even remotely establishing causation, alleging specific conduct, or showing how the alleged conduct harmed Plaintiff. Instead, Plaintiff makes vague arguments unsupported by the facts.

The undisputed evidence established that MTC gave regular thought to Plaintiff's wellbeing and Plaintiff cannot establish any malicious purpose, because there was none. For this reason, among others articulated here and in the initial moving papers, Plaintiff cannot meet his *prima facie* case for Intentional Infliction of Emotional Distress and MTC is entitled to adjudication of this claim in its favor.

**C.  Marrero, Ruiz, and Robinson are Not Officers, Directors, or Managing Agents Exercising Substantial Discretionary Authority Over Decisions That Determine Corporate Policy.**

Plaintiff's punitive damages claim must be rejected for failure to identify an

officer, director, or managing agent of MTC that engaged in or ratified any conduct constituting malice, oppression, or fraud. The term "managing agent" includes "only those ***corporate employees*** who exercise **substantial** independent authority and judgment in their corporate decision making so that their decisions ultimately ***determine corporate policy***." (*White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 566-567 [emphasis added].) Plaintiff seeks the imposition of punitive damages as to a corporate defendant. As Plaintiff is aware, MTC is a corporate entity that contracts to operate, in addition to IRDF, "four other detention centers, twenty-one correctional facilities, and a probation and parole program. MTC [] also does business in Puerto Rico, Egypt, and the United Kingdom."[6] (Complaint ¶ 12.) Thus, to successfully establish his claim for punitive damages, Plaintiff must allege that a corporate employee who exercises substantial independent authority and judgment in their corporate decision-making, such that their decisions ultimately determine corporate policy, acted or ratified conduct constituting malice, oppression, or fraud. The test requires proof that the managing agent is influential to corporate policy. Plaintiff fails to meet this high burden.

While again misstating the law[7], or failing to cite any evidence at all, Plaintiff claims that IRDF staff members Marrero, Ruiz, and Robinson are managing agents of MTC because of their positional authority for the local operation of IRDF. Plaintiff fails to, and importantly cannot, set forth any evidence establishing that these individual staff members "determine corporate policy" as is required for the imposition of punitive damages. Plaintiff cites the unpublished case *Webb v. Geo Group, Inc.* No. CV 16-02747-BRO, 2017 WL 11636422 (C.D. Cal Mar. 22, 2017), for the proposition that a warden can be a managing agent. However, *Webb* is

---

[6] Although not alleged in the Complaint, MTC operates in additional countries and territories around the globe.

[7] For example, Plaintiff misrepresents the holding in *Shaw v. San Joaquin County*, U.S. Dist. LEXISS 34816 at *2 (E.D. Ca. 2006) in stating a county jail was assessed punitive damages in a solitary confinement case. There, only the individually named defendants were assessed punitive damages. (*Id.* at *1.)

distinguishable from the facts here. *Webb* is an employment case, describing harassing and discriminatory conduct by the warden directed at the employee plaintiff. There, plaintiff offered evidence supporting an inference that the warden *intentionally* acted with animosity toward plaintiff and rejected positive performance evaluations of plaintiff. (*Id.* at *22.) The facts of *Webb* are inapposite here as Plaintiff cannot allege such intentional conduct. Whether Marrero, Ruiz, and Robinson had discretionary authority over Plaintiff's detention is not the standard; the standard requires proof that they influenced corporate policy. Marrero, Ruiz, and Robinson did not even remotely impact MTC's corporate policy and did not engage in conduct constituting malice, oppression, or fraud.

Additionally, MTC maintains and reiterates its objection to the use or reference to the irrelevant and inadmissible reports by the ICE Office of Inspector General and/or the California Department of Justice. Plaintiff's argument that MTC should be assessed punitive damages on the basis that IRDF staff allegedly "disregarded" the conclusions of those reports fails as the evidence is wholly inadmissible.

Finally, Plaintiff's claim that MTC's operational design for IRDF warrants the imposition of punitive damages falls short as Plaintiff offers no evidence that the "entire organization [was] involved in the acts that constitute malice." (*Romo v. Ford Motor Co.* (2002) 99 Cal.App.4th 115.) Moreover, there is absolutely no evidence in the record supporting Plaintiff's newfound allegation that MTC had a profit-based motivation in its treatment of Plaintiff and the argument should be dismissed for lack of evidentiary support. In sum, Plaintiff fails to meet the standard to impose punitive damages upon MTC. The issue should be adjudicated in MTC's favor.

### III.
### CONCLUSION

For the reasons articulated herein and in MTC's Partial Motion for Summary Judgment, MTC respectfully requests this Court summarily adjudicate the issues of Intentional Infliction of Emotional Distress and punitive damages in MTC's favor.

| | | |
|---|---|---|
| 1 | Dated: March 30, 2023 | **HIGGS FLETCHER & MACK LLP** |
| 2 | | |
| 3 | | By: */s/ Chandler C. Roth* |
| 4 | | JOHN J. RICE |
| | | CHANDLER C. ROTH |
| 5 | | Attorneys for Defendant |
| | | MANAGEMENT & TRAINING |
| 6 | | CORPORATION |

11560108.1